1  Robert Townsend, Pro Per
2  P. O Box 3330
   Dana Point, CA 92629
3  Phone: (949) 495-0089
   Fax:    (949) 495-0580
4
   Plaintiff In Pro Per
5

FILED
CLERK U.S DISTRICT COURT
NOV 25 2008
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

6              UNITED STATES DISTRICT COURT
7              CENTRAL DISTRICT OF CALIFORNIA
               SOUTHERN DIVISION

| | |
|---|---|
| 9  ROBERT TOWNSEND,<br>   Plaintiff,<br>10<br><br>11  v.<br>12<br>CHASE BANK USA N.A.,<br>13  MANN BRACKEN, LLC, MANN BRACKEN,<br>ATTORNEYS, PALISADES COLLECTIONS,<br>14  Related named individuals, Does 1-10<br>15<br>16              Defendants.<br>17 | **CASE NO. SACV08-00527-AG (ANx)**<br>**SECOND AMENDED COMPLAINT**<br>**FOR DAMAGES**<br><br>1.  Violations of Cal. Civil Code §1788 et seq.<br>2.  Violations of 15 U.S.C. § 1692 et seq.<br>3.  Defamation/ Credit Slander<br>4.  Fraudulent Misrepresentation<br>5.  Negligent Misrepresentation<br>6.  Violations of 18 U.S. C. § 1961 et seq.<br>7.  Declaratory and Injunctive Relief Under 18 U.S.C. § 1964(a)<br>8.  Unjust Enrichment<br>9.  Fraud<br>10.  Unfair Competition - Cal. B & P Code § 1961 et seq.<br>11.  Intentional Infliction of Emotional Distress<br>12.  Breach of Contract<br>13. Truth in Lending<br>14.  Breach of the implied covenant of Good faith and fair dealing<br><br>**DEMAND FOR JURY TRIAL** |

26        COMES NOW the Plaintiff ROBERT TOWNSEND and alleges causes of action
27  against Defendants, and each of them, as follows:
28

-1-

## **PARTIES**

1. Plaintiff, an individual, at all times relevant herein, was a resident of Orange County, California.

2. Plaintiff is informed and believes, and thereon alleges, that Defendant CHASE BANK USA, N.A., CHASE MANHATTAN, (hereinafter "CHASE") is a New York corporation with its commercial banking headquarters in Chicago, Illinois, and doing business in California, including in Orange County.

3. Defendant MANN-BRACKEN, LLC (hereinafter Mann-Bracken) is a State of Georgia LLC with principle place of business in Atlanta GA and is doing Business in California and Orange County.

4. Defendant MANN-BRACKEN, Attorney's (hereinafter Mann-Bracken) is a State of Georgia Professional Law Corporation with a principle place of business in Atlanta, GA and is doing Business in California and Orange County.

5. Defendant PALISADES COLLECTIONS, LLC (hereinafter Palisades) is a State of New Jersey Corporation with its principle place of business in New Jersey and is doing Business in California and Orange County.

6. Defendant DEBORAH JENSEN and other related defendants listed are individuals who, at all times relevant herein, were employed in or conducting business in behalf of CHASE in California and Orange County.

7. Defendant JAMES BRANTON AKA JEFF BRANTON and other related defendants listed are individuals who, at all times relevant herein, were employed in or conducting business in behalf of MANN-BRACKEN in California and Orange County.

8. Defendant ERIC WASSERMAN and other related defendants listed are individuals who, at all times relevant herein, were employed in or conducting business in behalf of PALISADES COLLECTIONS, LLC in California and Orange County.

9. Whenever this complaint alleges that any defendant did any act or thing, it is meant that it, it's directors, officers, agents, employees, or the directors, agents or employees of its subsidiaries, performed or participated in such act or thing, and in each instance that

-2-

such act or thing was authorized or ratified by, and done on behalf of, that defendant

10. In doing the things alleged in this Complaint, each of the Defendants was the employee, agent, and/or alter ego of their Co-Defendants. As agents and employees, they acted within the course and scope of such employment and agency. The conduct of each of the Defendants and their agents and employees was authorized, and/or directed and/or was subsequently ratified by each of their Co-Defendants.

11 In doing the things alleged in this Complaint, each of the Defendants was the employee, DEBORAH JENSEN, JAMES BRANTON AKA JEFF BRANTON, ERIC WASSERMAN, and other named defendants collectively referred to hereafter as "other related defendants"

## JURISDICTION, VENUE, AND DEMAND FOR JURY TRIAL

12. This Court has jurisdiction of the federal claims asserted pursuant to 28 U.S.C. §1331. The Court has supplemental jurisdiction of the state law claims asserted pursuant to 28 U.S.C. §1367(a). Venue is proper in this district pursuant to 28 U.S.C. §1391 because the Defendants or some of them were conducting business in this district and many of the events occurred in this district. Further, Plaintiff resides in this district. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedures, Plaintiff thereby demands a jury trial on any and all issues triable by a jury.

## STATEMENT OF FACTS

13. In 2006, Plaintiff's personal finances were in disarray. He was not behind in his Credit card payment obligations (in fact he had consistently paid better than agreed and more than required as claimed by the defendants) and contacted his creditor regarding the amount claimed due, penalties, interest and other fees charged to Plaintiff as a result of the use of the credit cards issued by CHASE. A dispute ensued between Plaintiff and CHASE as to the true amount of the then existing amount claimed due and owing by CHASE. CHASE and their designated employees, agents or assignees instituted subsequently aggressive collection activities against Plaintiff.

14. During that time, Plaintiff received a letter dated January 5, 2007, from Defendant MANN-

-3-

1   BRACKEN that recited that it was the assignee of Defendant CHASE on debts owed by Plaintiff

2   on various credit card accounts issued by Chase.  In particular, the debt purportedly was for

3   delinquent accounts with Defendant CHASE, which were in dispute.  The purported amount

4   claimed to be due and owing on the combined accounts totaled in the principal with accrued

5   interest of more than $30,000.00.  JAMES BRANTON AKA JEFF BRANTON of MANN-

6   BRACKEN on January 5, 2007, March 8, 2007 was contacting Plaintiff in an effort to collect

7   these debts. The communication additionally threatened Plaintiff that if he did not pay the debts

8   in full, he would be subject to incurring additional expenses such as court cost, attorney fees,

9   and/or damages

10       15.Plaintiff contacted MANN-BRACKEN to explain a legitimate dispute existed about the

11   debts via letters dated January 10, 2007, March 19, 2007, and April 18, 2007 and several other

12   dates.  He advised this Defendant that he did not owe the amount claimed due and owing by

13   CHASE; a legitimate dispute existed so there could be no delinquent amount owed, nor had the

14   Plaintiff defaulted on his obligations to CHASE.  Defendant failed to respond to Plaintiffs

15   request for documentation in accord with requirements of the FDCPA in full, but did provide

16   documents that purported to VALIDATE the disputed debt insisting by implication, however,

17   that Plaintiff had incurred the debt and that CHASE wanted their money.

18       16.The January 5, 2007 letter from MANN-BRACKEN from JAMES BRANTON AKA JEFF

19   BRANTON gave Plaintiff 30 days to dispute the debt.  The Plaintiff did so and sought

20   validation/verification and other supporting documentation from MANN-BRACKEN including

21   but not limited to a cumulative itemization of all interest, penalties, and fees charged to the

22   accounts since inception of the accounts.

23       17.Plaintiff received a form letter dated May 29, 2008 from Defendant PALISADES

24   COLLECTIONS, LLC SIGNED BY no one that recited that it purchased Defendant CHASE

25   debts owed by Plaintiff on various credit card accounts issued by Chase. In particular, the debt

26   purportedly was for a delinquent account with Defendant CHASE, which was in dispute.  The

27   purported amount claimed to be due and owing according to PALISADES totaled in the

28   principal with accrued interest of more than $12,062.02 on a doubtful and disputed debt of $10,

159.43.  Said letter specifically said "We may report information about your account to credit bureaus" Consequently, late payments, missed payments, or other defaults on your account may be reflected in your credit report" On information and belief, when PALISADES sent these letters, it did so both for itself and as and agent of CHASE and MANN BRACKEN at the direction of CHASE AND MANN-BRACKEN pursuant to an agreement, the form of which is unknown to plaintiff, between CHASE, MANN-BRACKEN and PALISADES. Said letter, by its contents, made threats against plaintiff, among others being, that it would report him to credit agencies notwithstanding his dispute of the alleged debt.

18. PALISADES COLLECTIONS, LLC was contacting Plaintiff in an effort to collect this debt, which CHASE had sold to it.  According to the form letter, the communication additionally threatened Plaintiff that if he did not pay the debt, "...we may report information about your account to credit bureaus.  Consequently late payments, missed payments, or other defaults on your account n may be reflected in your credit report."  Threatening by implication, he would be subject to incurring additional expenses such as increased cost of borrowing cost, attorney fees, and/or damages.

19. MANN-BRACKEN and PALISADES COLLECTIONS, LLC refused to completely comply with the requests of Plaintiff and this litigation ensued.  The responses and documents provided by MANN-BRACKEN on August 13, 2007 are unreadable, unintelligible, incomprehensible, confusing and not in compliance with State and Federal Fair Debt Collections laws and requirements as is more fully set forth herein. PALISADES COLLECTIONS LLC simply did not respond, ignoring the request of the Plaintiff.

20. The defendants and each of them have conspired to create an artificial "profit" over and above the true amount due and owing by the Plaintiff by adding fraudulent and illegal charges.  The creation of artificial and illegal profits is a pattern and practice of CHAS and each of the other defendants as well as other creditors for which they provide services.

21. This case also arises out of CHASE's  business practice of reviewing its credit card accounts at the end of each account's billing cycle, targeting selected cardholders including and

not limited to Plaintiff for interest rate increases as a result of such review, and then imposing *backdated* rate increases and additional finance charges on these accounts. CHASE implements this practice by reviewing each account on a monthly basis, using a secret methodology in order to determine whether to increase the interest rates and finance charges for the billing cycle just ended.

22. In the event CHASE decides to impose a rate increase, CHASE *backdates the effective date of the rate increase* by approximately one month (to the first day of the billing cycle just ended), and *recalculates the accrued finance charges for that billing cycle* at the new, higher rate. As a result of this practice, the Plaintiff incurred a penalty charge in the form of one whole month's additional interest at the increased rate before he could even discover that the new rate or penalty had gone into effect. (Discovered shortly prior to June 2006 with an ending interest rate of 29.24 %.

23. CHASE imposes these selective rate increases based on a proprietary methodology for month-end reviews, which it keeps strictly confidential. This methodology is not made public, not disclosed to its cardholders, and is not described in its Card Member Agreements. As a result, Plaintiff and others similarly situated who reasonably believed, throughout a billing cycle, that they were being charged at the agreed upon rate shown on their previous billing statement, found themselves billed at a higher rate and assessed more finance and penalty charges than reasonably expected when the billing cycle ended.

24. CHASE's practice of *retroactively* increasing interest rates and finance charges is immensely profitable to CHASE, but is completely unfair to Plaintiff. For example, a card member with a $10,000 balance whose interest rate was previously 7.99% could suddenly find, upon reviewing a new billing statement, that CHASE had just increased the rate to 29.24%, and that this increase had been applied retroactively to the billing cycle just ended, resulting in the instantaneous assessment of an additional $165.00 or more in finance charges.

25. In the above example, the rate increase is completely unfair, illegal, and violates the implied covenant of good faith and fair dealing in that it is unilaterally imposed *without warning or advance notice,* operates *retroactively,* and is based on *proprietary formulas* known only to CHASE so that the Plaintiff and others similarly situated has no way of knowing in advance what rate he or she will be charged for the month.

26. Furthermore, CHASE calculates its finance charges by compounding interest on a daily basis during each billing cycle, but when it increases the interest rate, CHASE goes back and *re-computes the finance charges that already accrued to the account during the cycle,* instantaneously creating an additional lump sum of finance charges that did not exist the moment before the rate increase.

27. By retroactively increasing the rate of interest at the end of a billing cycle, CHASE not only instantaneously creates an additional finance charge covering a past period, but it also denies this Plaintiff any opportunity to pay off or transfer account balances to obtain a better rate of interest or otherwise mitigate the impact of the rate increase. Such additional finance charges constitute an illegal penalty. In effect, CHASE is carrying out a scheme designed to deliberately cheat Plaintiff and a large number of others similarly situated out of individually small sums of money, but in total a staggering illegal, unlawful, unconscionable financial windfall to CHASE and its shareholders.

28. As a result of the *backdated rate increases* described above, CHASE wrongfully imposed illegal, unfair, unconscionable, outrageous, reprehensible, and punitive rate increases and finance charges on Plaintiff thousands of others similarly situated in a manner that intentionally denied them the ability to reject such increases or mitigate their impact.

## THE RICO ENTERPRISE

29. Plaintiff and others similarly situated are "persons" within the meaning of 18 USC § 1961 (3). On information and belief, the RICO Enterprise is CHASE as well as others presently

-7-

1   unknown to plaintiff as they are hidden by the structure of the illegal activities of the individual
2   defendants.

3   30. MANN-BRACKEN ATTORNEYS AT LAW, MANN-BRACKEN, LLC AND
4   PALISADES COLLECTIONS LLC are high-volume debt collectors that attempt to collect
5   debts, allegedly owed by Plaintiff and other similarly situated consumers in California and
6   throughout the country.

7   31. MANN-BRACKEN ATTORNEYS AT LAW, MANN-BRACKEN, LLC AND
8   PALISADES COLLECTIONS LLC collection efforts are primarily through the use of dunning
9   letters and follow-up telephone calls.  Such letters and calls frequently involve the threats of civil
10  lawsuits, credit report damage, or slander or enforcement of biased binding arbitration.

11  32. MANN-BRACKEN ATTORNEYS AT LAW, MANN-BRACKEN, LLC AND
12  PALISADES COLLECTIONS LLC also attempts to collect amounts far in excess or the original
13  debt through the artifice of "churning" the account among each other in accord with a previously,
14  much used connivance and plan, adding illegal, unlawful, unconscionable fees and charges to the
15  debt, and failing to disclose the nature and extent of those additional charges.

16  33. MANN-BRACKEN ATTORNEYS AT LAW, MANN-BRACKEN, LLC AND
17  PALISADES COLLECTIONS LLC has no authority or legal right to add up-charges to the
18  original debt or, if they do, they must specify the up charge, the purpose and intent of the up
19  charge and the up charge cannot be a percentage of the amount recovered if any as well as not
20  being outrageous or unconscionable.

21  34. Nevertheless, MANN-BRACKEN ATTORNEYS AT LAW, MANN-BRACKEN, LLC
22  AND PALISADES COLLECTIONS LLC conspired with DEBORAH JENSEN, JAMES
23  BRANTON AKA JEFF BRANTON, ERIC WASSERMAN CHASE Defendants to take the
24  original debt and mark it up by a percentage or heap outrageous or unconscionable additional
25  fees and charges to the original debt, thereby ensuring that CHASE Defendants receive either the
26  full amount of the debt alleged to be owed to them, or the full amount of the debt plus an
27  unwarranted artificial, illegal, profit added to the debt,

28  35. MANN-BRACKEN ATTORNEYS AT LAW, MANN-BRACKEN, LLC AND

-8-

PALISADES COLLECTIONS LLC simultaneously benefit by receiving additional charges for which they are not entitled to receive as well as continuing to receive additional assignments from CHASE Defendants and other credit card issuers by the collection activities of DEBORAH JENSEN, JAMES BRANTON AKA JEFF BRANTON, ERIC WASSERMAN or other related named defendants from their individual physical locations throughout the country for the past ten years or more using the mails and telephone wires to extract additional funds from Plaintiff and others similarly situated not due and owing and in effect, disputed all done IN FURTHERANCE OF THE CONSPIRACY.

36. Defendants and each of them have operated or managed an enterprise, namely the "Collection Enterprise," consisting in part of the defendants listed 1-4 below with the defendants as its members, employees, associates, co-conspirators, in which they have conducted or participated, directly or indirectly, to extort, defraud, and misappropriate monies and property from Plaintiff and others similarly situated through a pattern of racketeering activity.

37. Based upon Plaintiff's current knowledge, the following persons constitute a group of individuals associated in fact, that Plaintiff refers to as the "Collection Enterprise"

//

**DEFENDANTS:**

(1) CHASE BANK, USA, N.A. and

(2) Other creditors utilizing collection services from defendants MANN-BRACKEN ATTORNEYS AT LAW,

(3) MANN-BRACKEN, LLC AND;

(4) PALISADES COLLECTIONS LLC.

(5) DEBORAH JENSEN, JAMES BRANTON AKA JEFF BRANTON, ERIC WASSERMAN and other named defendants collectively referred to hereafter as "other related defendants"

38. The "Collections Enterprise" was formed by the defendants and other related defendants to coerce payments over and above what was rightfully due and legally owed through undisclosed, or when disclosed, not disclosed with specifics of the charges that are outrageous or

1   unconscionable fees and charges to the original debt, threatened litigation or biased binding
2   arbitration enriching the defendants and each of them.

3   39. The "Collection Enterprise' constitutes a legal association, as well as a group of
4   individuals associated in fact, within the meaning of 18 U.S.C. § 1961 (4). By reason of the
5   abusive collection activities, the adding-on of additional fees, charges, and penalties to the
6   original disputed debt owed by Plaintiff and others similarly situated the acts and omissions of
7   the "Collection Enterprise " as set forth herein are imputed to, and are the acts and omissions of
8   the Defendants unless otherwise indicated. The "Collection Enterprise" is an ongoing
9   organization which engages in, and whose activities affect interstate commerce beginning not
10  less than ten years prior and recently discovered by Plaintiff no earlier than June 6, 2006.

11  40. While the Defendants and other related defendants participate in the "Collection
12  Enterprise," they also have an ascertainable structure and existence separate and distinct from the
13  Enterprise and the pattern of Racketeering alleged herein.

14  41.Rather than conduct the collection activities against the Plaintiff and others similarly
15  situated with lawful process and legal procedures, the Defendants agreed to and did engage in
16  multiple acts of mail and wire fraud inter alia constituting a pattern of racketeering activity
17  intended to unlawfully threaten, coerce, and extort Plaintiff and others similarly situated to pay
18  more than was legitimately owed and payable.

19  42 To this end, amongst other illegal and improper conduct encouraged, solicited and
20  participated in a fraud to wrongfully add on unlawful charges and falsely and improperly
21  threaten civil litigation or biased binding arbitration to achieve the purposes of the racketeering
22  conspiracy. As indicated in the letters from the defendants and other related defendants in the
23  letters of January 2007 and thereafter.

24  43 .Upon information and belief, MANN-BRACKEN ATTORNEYS AT LAW, MANN-
25  BRACKEN, LLC AND PALISADES COLLECTIONS LLC adds to each debt it collects fees
26  and other charges on behalf of CHASE defendants and other Credit card issuers.  On a percentile
27  basis, these additional fees and charges in the case of Plaintiff were 50-90% and more have been
28  added to create an artificial profit over and above the amount due and owed by Plaintiff as

-10-

indicated in EXHIBIT # 1, **(CHASE invoices dated February 4, 2006 through February 4, 2007, account ending in numbers 0731) (16 pages for exemplar purposes only)** with attached explanations of the finance charge that is indecipherable, unreadable and unintelligible.

44 The Plaintiff's contract 1994 with CHASE allows for *"reasonable collection agency fees."* However, MANN-BRACKEN ATTORNEYS AT LAW, MANN-BRACKEN, LLC AND PALISADES COLLECTIONS LLC's addition of the fees and charges as a percentile to its collection amount is per se unreasonable, outrageous, and unconscionable. In other words, the amount it cost to extend credit card cash advance or purchases of goods and services or of collection efforts to collect $100.00 is not more than it cost to loan or collect a $100, 000.00! However, the scheme instituted by defendants, the amounts added to the loan or debt increases with the amount of the loan and the amount being collected, all of which amount to fraudulent and illegal charges. The Plaintiff does not have a copy of the original contract and amendments and seeks leave of this court to amend with further specificity when the contracts and amendments are provided by defendants in discovery.

45 Moreover, CHASE in its Credit Card Agreement and MANN-BRACKEN ATTORNEYS AT LAW, MANN-BRACKEN, LLC AND PALISADES COLLECTIONS LLC in its dunning letters to Plaintiff and others similarly situated, makes false statements and assertions to extort payment for illegal charges. As an example, the amount of the debt due claimed by CHASE when the disputes arose totaled according to billing statements as of June 2006 of $29,016.15 (estimated) while the amount claimed to be due and owing reached cumulative totals of $44,167.89 (estimated) as of December 31, 2006. There is an overt misrepresentation by the Defendants with respect to threatened additional fees of "this could change at the arbitrator's discretion."

46 The debt being collected cannot incur additional fees and cost or lead to further loss on the part of the defendants and such language contained in the MANN BRACKEN letter of March 8, 2007, **"Depending on your agreement with the creditor, interest, late charges, and OTHER CHARGES may continue to accrue on your account." "...If we are unable to reach satisfactory arrangements, the filing of an arbitration claim will be evaluated ... if an**

1  arbitration award in favor of **CHASE BANK USA, N.A. is granted WE INTEND TO**
2  **PURSUE LEGAL REMEDIES AVAILABLE PURSUANT TO THE AWARD"**
3  **(EXHIBIT 2)** (inter alia) is included to further threaten the Plaintiff and others similarly situated
4  by suggesting the prospect of additional amounts becoming owed to defendants if the Plaintiff
5  and others similarly situated persist in disputing the amounts claimed to be due by the
6  "Collection Enterprise"

7                                    **PREDICATE ACTS**

8      47. Section 1961 (1) of RICO provides that "racketeering activity" includes any act
9  indictable under 18 U.S.C. § 1341 (relating to mail fraud), and 18 U.S.C. § 1343 (relating to wire
10  fraud), 18 U.S.C. § 1951 (relating to interference with commerce through extortion), and 18
11  U.S.C. § 1952 (relating to extortionate conduct). As set forth below and above, defendants have
12  and continue in conduct violating each of these laws to effectuate their scheme.

13     48. In addition, in order to make the scheme effective, each of the defendants sought to and
14  did aid and abet others' in violating the above laws within the meaning of 18 U.S.C. § 2. As a
15  result, their conduct is indictable under 18 U.S.C. § 1341, 1343, 1951 (b)(2) and 18 U.S.C. §
16  1952 9(a) on these additional basis.

17     //

18                        **VIOLATIONS OF 18 U.S.C. §§ 1341 and 1343**

19     49. For the purpose of executing and/or attempting to execute the above scheme to defraud or
20  obtain money by false pretenses, representation or promises, the defendants and other related
21  defendants in violation of 18 U.S.C. § 1341, placed in post offices, since 1994 from CHASES
22  billing statement location and elsewhere for the remaining other related defendants caused the
23  matter and things delivered by commercial carrier, and received matter and things from the
24  postal service or commercial interstate carriers including but not limited to, contracts,
25  agreements, made credit card loans, billing records, statements, payments, collection letters, and
26  dunning letters inter alia.

27     50. For the purpose of executing and/or attempting to execute the above scheme to defraud or
28  obtain money by false pretenses, representation or promises, the defendants and other related

-12-

defendants in violation of 18 U.S.C. § 1343, transmitted or received by wire, matter and things which include, but not limited to, made credit card loans and received payments, contracts, agreements, billing records, collection letters, dunning letters.

51. The matter and things sent or received by defendants via postal service, commercial carrier, wire or interstate electronic media include inter alia:

    a. Material containing false and fraudulent misrepresentations regarding the amount and character of the terms and conditions of the credit card agreement terms and conditions.

    b. Material containing false and fraudulent misrepresentations regarding the amount and character of the debt being collected and the cash advances or credit extended for goods and services.

    c. Material containing false and fraudulent misrepresentations regarding the threat of civil litigation or binding arbitration to collect the false debt and;

    d. Defendant's acceptance of payments from Plaintiff and others similarly situated including unlawful charges, fees, and overcharges.

52. Other matter and things sent through or received from the postal service, commercial carrier, or interstate wire transmission by the defendants included information or communications in furtherance of or necessary to effectuate this scheme.

53. The Defendants misrepresentations, acts of concealment, failures to disclose were knowing, and intentional, and made for the purpose of deceiving Plaintiff and others similarly situated to obtain their monies and property for defendants gain.

54. The defendants and other related defendants either knew or recklessly disregarded the fact that misrepresentations and omissions set forth above were material and Plaintiff and others similarly situated relied on the misrepresentations and omissions set forth above, by paying or agreeing to pay amounts in excess of what was legally due.

55. As a result, defendants and other related defendants have obtained monies and property belonging to Plaintiff and others similarly situated and Plaintiff and others similarly

-13-

1  situated have been injured in their business or property by Defendants overt acts of mail and wire

2  fraud, and by their aiding and abetting each other's acts of mail and wire fraud.

3  <u>**VIOLATIONS OF 18 U.S.C. §§ 1951 (a) and (b)(2) and 1952(a)(3)**</u>

4      56.    Defendants and other related defendants have also carried out and/or

5  attempted to carry out schemes described above, and below and thereby obtained the monies and

6  property of Plaintiff and others similarly situated by inducing them to part with their monies and

7  property out of fear of economic loss.

8      57.    Specifically, defendants have coerced Plaintiff and others similarly

9  situated to pay amounts more than were legitimately owed, through fear of economic loss, credit

10  slander to the credit reporting bureaus and in threatened civil lawsuits or binding biased

11  arbitration and the potential for even further damages payable by Plaintiff and others similarly

12  situated.

13      58.    Defendants created this fear through threats, both veiled and explicit, that

14  Plaintiff and others similarly situated will be forced to pay even additional monies that are not

15  properly due.

16      59.    On information and belief, the individual defendants mentioned used illicit

17  income, that being income derived from improper collection activities such as adding unearned

18  interest and fees, adding attorney fees and other undisclosed fees, and invested it into CHASE

19  and other entities which plaintiff can only discover through discovery.

20      60.    Defendants and other related defendants also travel and use the mail and

21  other facilities in interstate commerce, and cause others to do so, with the intent of carrying on

22  their extortion in violation of 18 U.S.C. §§ 1951 (a) and (b)(2) and 1952(a)(3)

23      61.    As a result of defendants overt acts in violation of 18 U.S.C. §§ 1951 (a)

24  and (b)(2) and 1952(a)(3), as well as defendants' aiding and abetting those violations, Plaintiff

25  and others similarly situated have parted with money that was rightfully theirs and have been

26  injured to their business and property.

27  **<u>CONSPIRACY</u>**

28      62.    Defendants and other related defendants have not undertaken the above

-14-

practices and activities in isolation, but instead have done so as part of a common scheme and conspiracy, which includes not only defendants, but also other debtors, which utilize defendants Chase's Credit Products.

63.     Defendants have not undertaken the above practices and activities in isolation, but instead have done so as part of a common scheme and conspiracy, which includes not only defendants and other related defendants, but also other Creditors, which utilize defendants MANN-BRACKEN ATTORNEYS AT LAW, MANN-BRACKEN, LLC AND PALISADES COLLECTIONS LLC services.

64.     Each defendant and members of the conspiracy, with knowledge and intent, agreed to the overall objective of the conspiracy, agreed to commit acts of fraud and extortion to relieve Plaintiff and others similarly situated of their rightful monies and property and actually committed such acts.

65.     Indeed, for the fraudulent schemes described above to be successful, each defendant and other members of the conspiracy had to agree to act and utilize the same devices and fraudulent tactics against Plaintiff and others similarly situated.

66.     Numerous common facts exist among the defendants and other members of the conspiracy, including:

(a)     Each creditor, based on a contingency fee agreement, compensates MANN-BRACKEN ATTORNEYS AT LAW, MANN-BRACKEN, LLC, AND PALISADES COLLECTIONS LLC for their services.

(b)     MANN-BRACKEN ATTORNEYS AT LAW, MANN-BRACKEN, LLC AND PALISADES COLLECTIONS LLC, and each creditor conspire to add artificial and illegal profits to the amount of the debts owed by Plaintiff and others similarly situated. Said actions of this nature are shown by the monthly billings sent through the USPS to plaintiff by certain employees and agents, including Deborah Jensen, of CHASE and other defendants. Several communications from defendants establish

-15-

the wrongdoings alleged herein. These communications include communications received July 6, 2006, July 17, 2006 and July 23, 2006 from Deborah, Johnson, agent of CHASE and other defendants. As with other matters of proof, plaintiff needs the use and assistance of this court to allow him discovery to ascertain the sought after information.

(c)     MANN-BRACKEN ATTORNEYS AT LAW, MANN-BRACKEN, LLC AND PALISADES COLLECTIONS LLC, and each creditor conspire to threaten actions that they are not legally entitled to take and to collect debts they are not legally entitled to receive.

(d)     MANN-BRACKEN ATTORNEYS AT LAW, MANN-BRACKEN, LLC AND PALISADES COLLECTIONS LLC, and each creditor conspire to use the telephone to collect these artificial profits and illegal charges.

(e)     MANN-BRACKEN ATTORNEYS AT LAW, MANN-BRACKEN, LLC AND PALISADES COLLECTIONS LLC, and each creditor conspire to use electronic mail, electronic payment systems, state and federal banking systems involved in interstate commerce, and other common means of collecting artificial profits and illegal charges.

(f)     MANN-BRACKEN ATTORNEYS AT LAW, MANN-BRACKEN, LLC AND PALISADES COLLECTIONS LLC, and each creditor conspire to use many common post office boxes in various entities names and subsidiaries and physical locations to collect these artificial profits and illegal charges.

(g)     MANN-BRACKEN ATTORNEYS AT LAW, MANN-BRACKEN, LLC AND PALISADES COLLECTIONS LLC, and each creditor conspire to use various entities names and interrelated subsidiaries with common officers, directors, employees, associates, and ownership to churn the debts among themselves to up-charge with each transfer of

-16-

handling to collect additional unlawful and illegal fees.

(h)      MANN-BRACKEN ATTORNEYS AT LAW, MANN-BRACKEN, LLC AND PALISADES COLLECTIONS LLC, and each creditor conspire to add up-charges to each debt, rendering the collection charges per se unreasonable.

(i)      MANN-BRACKEN ATTORNEYS AT LAW, MANN-BRACKEN, LLC AND PALISADES COLLECTIONS LLC and each creditor conspire to extort over payment from Plaintiff and others similarly situated by falsely threatening that non-payment could subject the creditor to further loss.

67.      During the past ten years, the conspiracy was conducted through and implemented by: the agreements either (ORAL or WRITTEN, between Defendants and other related defendants between MANN-BRACKEN ATTORNEYS AT LAW, MANN-BRACKEN, LLC AND PALISADES COLLECTIONS LLC and each creditor (either explicit or implicit), to conduct the activities and practices set out in paragraphs above and below.

## RACKETEERING ACTIVITY

68.      The Defendants and other related Defendants have engaged in a "pattern of racketeering", as defined by 18 U.S.C.§ 1961 (5), by committing aiding and abetting in the commission of at least two acts of racketeering activity, i.e. indictable violations of 18 U.S.C. §§1341, 1343, 1951(b)(2), or 1952(a)(3) as described above and below within the past ten years.

69.      In fact, each defendant has committed or aided and abetted in the commission of thousands of acts of racketeering activity SUCH AS mail and wire fraud, the adding of unexplained "OTHER CHARGES" INTEREST, RETROACTIVE INTEREST, PENALTIES as well as the CALCULATION AND DATES OF THE CALCULATIONS, THE UNDISCLOSED, UNEXPLAINED PROPRIETARY FORMULA THEREOF. Each act of racketeering activity was related, and had a similar purpose, involved the same or similar participants and method of commission, had similar results and impacted similar victims including Plaintiff and others similarly situated.

-17-

70.     The multiple acts of racketeering activity which defendants committed and or conspired to commit, aided or abetted in the commission of, were related to each other and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C.§ 1961(5)

71.     A few representative examples of the types of predicate acts committed by defendants pursuant to their scheme to defraud Plaintiff and their conspiracy to violate RICO are set forth below in the causes of actions of this complaint as well as the paragraphs preceding.

## RICO VIOLATIONS

### §1962(a)

72.     Section 1962(a) of RICO provides that "it shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering ... in which such person has participated as a principal within the meaning of §2, Title 18, U.S. Code, to use, invest, directly or indirectly, any part of such income, or proceeds of such income, in acquisition of any interest in, or establishment or operation of, any enterprise which is engaged in or the activities of which affect interstate or foreign commerce."

73.     As set forth above and below, the defendants receive income from their participation as principals in an extensive pattern of racketeering activity such as fees, salary, bonus, contingency fees, promotions and a continuing flow of assignments or the sale thereof to the "COLLECTION ENTERPRISE" and conspiracy to collect disputed debts from the Plaintiff and others similarly situated.

74.     The income is reinvested to finance future racketeering activity, and the future enterprise of the creditors and the "Collection Enterprise."

### §1962(c)

75.     Section 1962(c) of RICO provides that it shall be unlawful for any person employed or associated with any enterprise engaged in, or the activities of which affect interstate and foreign commerce, to conduct or participate, directly or indirectly, in conduct of such enterprises affairs through a pattern of racketeering activity..."

76.     Through the patterns of racketeering activities outlined above and below,

-18-

1   the defendants have also conducted and participated in the affairs of the "Collection Enterprise."

2   **§1962(d)**

3       77.    Section §1962(d) of RICO makes it unlawful "for any person to conspire

4   to violate and provisions of subsections (a), (b) or (c)" of this section"

5       78.    Defendants conspiracy to secure monies due Plaintiff and others similarly

6   situated for their own use through the fraudulent and extortionate scheme described above and

7   below violates 18 U.S.C. §1962(d)

8       79.    Each of the defendants agreed to participate, directly or indirectly, in the

9   conduct of the affairs of the "Collection Enterprise" through a pattern of racketeering activity

10  comprised of numerous acts of mail fraud, wire fraud, and extortion, and each defendant so

11  participated in violation of 18 U.S.C. §1962(c)

12      80.    Each defendant further agreed to use or invest, directly or indirectly, part

13  of the income derived from acts of mail fraud, and extortion, which constituted a pattern of

14  racketeering activity, in the establishment, operation and expansion of the "Collection

15  Enterprise" and has done so in violation of 18 U.S.C. §1962(a)

16      **CAUSE OF ACTION I**

17      *(Violations of California's Fair Debt Collection Practices Act,*

18      *Civil Code Section 1788 et seq., Against All Defendants)*

19      81.    Plaintiff refers to and incorporates by such reference the allegations

20  asserted in Paragraphs 1 through 15, inclusive, as though fully set forth herein.

21      82.    Defendant CHASE is a "creditor" as that term is used in Civil Code

22  Section 1788.2(i). Furthermore, Defendants CHASE, MANN-BRACKEN, and PALISADES

23  COLLECTIONS, LLC are companies engaged in the business of collection of consumer debt

24  and regularly collect consumer debts within this state. Accordingly, these Defendants, and each

25  of them, are "debt collectors" as defined in Civil Code Section 1788.2(c).

26      83.    Plaintiff is informed and believes, and thereon alleges, that Defendant

27  DEBORAH JENSEN and other related defendants as well as Defendant JAMES BRANTON

28  AKA JEFF BRANTON and other related defendants and Defendant ERIC WASSERMAN and

other related defendants is and has been, throughout the relevant period of this Complaint, an employee and agent of Defendants CHASE, MANN-BRACKEN, PALISADES, and each of them.

84.     Defendants and other related defendants have engaged in acts and practices in violation of California's Fair Debt Collection Practices Act, Civil Code Section 1788 et seq., in collection activities with respect to an alleged personal debt of Plaintiff, including, but not limited to the following:

(a)     Defendants, and each of them, made false, deceptive, and misleading representations either (ORAL or WRITTEN) between Defendants and other related defendants between MANN-BRACKEN ATTORNEYS AT LAW, MANN-BRACKEN, LLC AND PALISADES COLLECTIONS LLC to Plaintiff, among themselves, and to others involving Plaintiff, including:

(i)     Misrepresenting that Plaintiff had become delinquent and had defaulted in payment of his accounts with CHASE, attempting a collection activity.

(ii)    Misrepresenting that Plaintiff owed a debt, the amount of the debt, and the delinquency of the debt; and

(iii)   Falsely representing the character, amount, and legal status of the purported debt.

(b)     Defendants CHASE, MANN-BRACKEN and PALISADES made deceptive and misleading statements either (ORAL or WRITTEN, between Defendants and other related defendants between MANN-BRACKEN ATTORNEYS AT LAW, MANN-BRACKEN, LLC AND PALISADES COLLECTIONS LLC since at least January 5, 2007 and prior in reference to the true amount of the debt that was owed, the disputed amount based on *proprietary formulas* known only to CHASE in their written communications with Plaintiff in

-20-

representing that they had authority to commence and maintain collection activity on a purported debt owed by Plaintiff to CHASE and in failing to explain how CHASE had legal capacity to attempt to collect the purported debt.

(c)     Defendants CHASE, MANN-BRACKEN and PALISADES and other related defendants made false, deceptive, and misleading representations as to the true amount of the debt that was owed, the disputed amount based on *proprietary formulas* known only to CHASE in written communications since January 5, 2007 and prior, the true amount of the debt that was owed, the disputed amount based on *proprietary formulas* known only to CHASE in the assignment and sale of the Plaintiff's purported debt to CHASE that Plaintiff had opened a credit account and was delinquent on his repayment obligations, and CHASE refused and continued to refuse to contact its assignees to retract the false representations.

(d)     Plaintiff is informed and believes, and thereon alleges, that Defendant MANN-BRACKEN and PALISADES and other related defendants made false, deceptive, and misleading statements that they were authorized to collect unlawful, doubtful, and disputed debts and lawfully to conduct business in California beginning as early as January 5, 2007 and thereafter.

(e)     Defendants CHASE, MANN-BRACKEN and PALISADES, and DEBORAH JENSEN, JAMES BRANTON AKA JEFF BRANTON, ERIC WASSERMAN other related defendants engaged in unfair, unlawful, and unconscionable means to attempt to collect a debt purportedly owed by Plaintiff, including:

(i)     threats to report Townsend to credit agencies knowing there was a legitimate dispute that Townsend has

-21-

informed them about in detail.

        (ii)    attempting a collection activity based on knowingly false and baseless allegations that any debt was owed, knowing there was no valid documentation to justify allegations of delinquency, default or to report the Plaintiff purported debt as written off as a "bad debt."

        (iii)    making a written demand Monetary cost of legal research and other collection charges on the knowingly false representation that Plaintiff had agreed to such terms for the use of the purported credit that had been fully and conspicuously disclosed;

        (v)    failing to communicate that the debt was disputed and falsely implying that Plaintiff conceded the liability, such failure being for the sole purpose of attempting to pressure Townsend to pay money not owed and

        (vi)    collecting amounts they knew were not authorized by any agreement or permitted by law on the strength of false and misleading representations being made to the Plaintiff and others.

        (vii)    on information and belief, some of the representations were made in person and by phone and/or fax. Plaintiff will only be able to get the specifics of these representations through discovery.

    85.    Defendant DEBORAH JENSEN, JAMES BRANTON AKA JEFF BRANTON, ERIC WASSERMAN and other related defendants are employees and agents of some or all of the other Co-Defendants so that they each are responsible for any acts of DEBORAH JENSEN, JAMES BRANTON AKA JEFF BRANTON, ERIC WASSERMAN and other related defendants done in the course and scope of their employment and agency with

1   them, including those acts which were unlawful in connection with the collection activities

2   involving Plaintiff.

3           86.     The conduct of Defendants, and each of them, in reporting a delinquency

4   and then taking steps to collect the debt Plaintiff purportedly owed CHASE had the natural

5   consequence of harassing, oppressing, and abusing Plaintiff in an effort to coerce him into

6   paying a debt he did not owe and which he specifically and repeatedly advised Defendants, and

7   each of them, that he did not owe. On information and belief, said alleged delinquencies were

8   reported in writing, or by electronic transmission to several credit reporting agencies on or about

9   the following dates Dec 206, Nov 2006, Oct 2006, Sept 2006, Aug 2006, July 2006, continuing

10  thru April, May 2008,  Additionally, also on information and belief, defendants communicated

11  between themselves as to how to best pressure Townsend to pay the alleged bills. The specific

12  details of these communications are known only to defendants and can be found by Townsend

13  only through discovery.

14          87.     At the time Defendants, and each of them, directly or through their agents,

15  made the false, deceptive, and misleading representations set out above they knew, or should

16  have known, that the representations were untrue. The representations of Plaintiff's delinquency

17  or default were made by Defendants nonetheless, and were not withdrawn or retracted even

18  when the falsity of the representations has become known, even to this date.  Defendants and

19  each of them thereby acted recklessly, willfully, and intentionally with wanton disregard. Said

20  false representations were put into Townsend's credit files on the following dates Dec 206, Nov

21  2006, Oct 2006, Sept 2006, Aug 2006, July 2006, continuing thru April, May 2008, Attached as

22  Exhibit ( 3&4) is a representative copy of Townsend's credit profile with Experian, Trans Union,

23  and Equifax indicating the Dec 206, Nov 2006, Oct 2006, Sept 2006, Aug 2006, July 2006,

24  continuing thru April, May 2008,) and nature of the false information posted by defendants.

25          88.     As a proximate result of Defendant's actions, Plaintiff was caused to

26  suffer economic damages as well as other actual damages for worry, shame, humiliation, loss of

27  sleep, anxiety, nervousness, physical sickness, physical and mental suffering, pain, anguish, and

28  fright

89.    As a result of Defendant's violations of California Fair Debt Collection Practices Act, Plaintiff is entitled to an award of actual damages, statutory damages up to an amount of $1,000.00, and reasonable monetary damages and costs pursuant to Civil Code Section 1788.30.

90.    By engaging in the acts as alleged above, Defendants, and each of them, acted intentionally, maliciously, oppressively, fraudulently, despicably and in conscious disregard of Plaintiff's rights, thereby justifying an award of punitive damages pursuant to Civil Code Section 3294. Furthermore, Defendants CHASE, MANN-BRACKEN and PALISADES directed, authorized, and ratified the wrongful acts of their employee and agents through M. Douglas Mann, Esq., M.D. Mann, Esq.,  W. Christopher Bracken, Esq., III, Esq., W.C. Bracken, Esq., Chris Bracken, Esq.,  James D. Branton, Esq., Steven Mark Strong, Esq., Paul J. Gallo, Esq., Scott A. Kramer, Esq., Michael P. Chabrow, Esq., Andrew S. Lerner, Esq., Joseph Cooling, Esq.,  Gregory B. Walz, Esq., Keith D. Taylor, Esq., Karen D. Washington, Esq., Ahmad S. Washington, Esq., Nicholas H. Adler, Esq., Wendi E. Fassbender, Esq., Kristian Knochel, Esq., Clay D. Moseley, Esq., Ed Reilly, Esq., Christopher J. Diwan, Esq., Kendra Weathington, Esq., William J. Laying, Esq., Jr. Esq.,  Bracken Mann, Esq., Jeff Branton, Esq., John Conkell, Esq., Stephen Knezo, Esq., Nan Beilinson, Esq., Marixza Rosorio Mims, Esq., Scot Allen Mayo, Esq., Byron T. Elder, Esq., Anthony Carl Smith, Esq., Antonia Elease Fraley, Esq., Shameka T. Singleton, Esq., Chanel Soares, Esq., Vic Johnson, Esq., William Cadogan, Esq., Stacy Clark, Esq., Tony Desantiago, Esq., Ashley Beard, Esq., William H. Cansgan, Esq., Cristina Kirby, Esq., Moneque Green, Esq., Tamica Burnett, Esq., Corlissa W. Taylor, Esq., Corey J. Thompson, Esq., Linetta Felicia Smith, Esq., Felisa L. Victrum, Esq., Bertha Callahan, Esq., Perry A. Lewis, Esq.,  Babetta G. Sumner, Esq., Michelle D. Pieters, Esq., Kimberly S. Mahaffey, Esq., Linda S. Coleman, Esq., Eula M. Spencer, Esq., Amy Denise Allred, Esq., Michael C. Kelly, Esq., Jada A. Ceasar, Esq., Rochelle D. Ward, Esq., Deborah B. Pepper, Esq., Carolyn A. Todd, Esq., Holder M. Mathis, Jr. Esq., Wayne Carlton Rowe, Esq., Christopher Wayne Dawley, Esq., Canitra Lavern Herron, Esq., Cedric J. Brown, Esq., Cynthia K. Ford, Esq., Camay Dushon Clark, Esq., on behalf of Mann-Bracken, LLC.  Subsequently, on

or about January 2007 or soon thereafter Defendants Legal Counsel, M. Douglas Mann, Esq., M. D. Mann, Esq., W. Christopher Bracken, III, Esq., W.C. Bracken, Esq., Chris Bracken, Esq., James D. Branton, Esq., Steven Mark Strong, Esq., Paul J. Gallo, Esq., Scott A. Kramer, Esq., Michael P. Chabrow, Esq., Andrew S. Lerner, Esq., Joseph Cooling, Esq., Gregory B. Walz, Esq., Keith D. Taylor, Esq., Karen D. Washington, Esq., Ahmad S. Washington, Esq., Nicholas H. Adler, Esq., Wendi. E. Fassbender, Esq., Kristian Knochel, Esq., Clay D. Moseley, Esq., Ed Reilly, Esq., Christopher J. Diwan, Esq., Kendra Weathington, Esq., William J. Laying, Jr. Esq., Bracken Mann, Esq., Jeff Branton, Esq., John Conkell, Esq., Stephen Knezo, Esq., Nan Beilinson, Esq., Marixza Rosorio Mims, Esq., Scot Allen Mayo, Esq., Byron T. Elder, Esq., Anthony Carl Smith, Esq., Antonia Elease Fraley, Esq., Shameka T. Singleton, Esq., Chanel Soares, Esq., Vic Johnson, Esq., William Cadogan, Esq., Stacy Clark, Esq., Tony Desantiago, Esq., Ashley Beard, Esq., William H. Cansgan, Esq., Cristina Kirby, Esq., Moneque Green, Esq., Tamica Burnett, Esq., Corlissa W. Taylor, Esq., Corey J. Thompson, Esq., Linetta Felicia Smith, Esq., Felisa L. Victrum, Esq., Bertha Callahan, Esq., Perry A. Lewis, Jr. Esq., Babetta G. Sumner, Esq., Michelle D. Pieters, Esq., Kimberly S. Mahaffey, Esq., Linda S. Coleman, Esq., Eula M. Spencer, Esq., Amy Denise Allred, Esq., Michael C. Kelly, Esq., Jada A. Ceasar, Esq., Rochelle D. Ward, Esq., Deborah B. Pepper, Esq., Carolyn A. Todd, Esq., Holder M. Mathis, Jr. Esq., Wayne Carlton Rowe, Esq., Christopher Wayne Dawley, Esq., Canitra Lavern Herron, Esq., Cedric J. Brown, Esq., Cynthia K. Ford, Esq., Camay Dushon Clark, Esq., on behalf of Mann-Bracken, used the mail and telephone lines to negotiate a sale or assignment of the purported debt with PALISADES COLLECTIONS LLC, ERIC WASSERMAN, Esq., Gary Stern, Esq., Nan Belinson, Esq., Mitchell Hernan in behalf of Palisades Collections, LLC thereby also justifying an award of punitive damages pursuant to Civil Code Section 3294(b). (hereinafter collectively referred to as Defendants and other related defendants.)

## CAUSE OF ACTION II

*(Violations of the Federal Fair Debt Collection Practices Act, 15 U.S.C. Section 1692 et seq., Against CHASE, MANN-BRACKEN and PALISADES and DEBORAH JENSEN,*

*JAMES BRANTON AKA JEFF BRANTON, ERIC WASSERMAN other related defendants.)*

91.     Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates it by reference, as if all were set forth fully herein.

92.     Defendants CHASE, MANN-BRACKEN AND PALISADES are companies engaged in the business of collecting consumer debt and regularly collect consumer debts. Accordingly, these Defendants, and each of them, are "debt collectors" as defined in 15 U.S.C. Section 1692(a) (6). On information and belief, plaintiff alleges that CHASE was attempting to collect money that in whole or in part was due to other parties. Plaintiff believes he will establish the specifics of this allegation at such time as he is allowed discovery.

93.     Plaintiff is informed and believes, and thereon alleges, that Related Defendants is and has been, throughout the relevant period of this Complaint, an employee and agent of Defendants CHASE, MANN-BRACKEN, PALISADES, and each of them.

94.     The acts and practices in which Defendants have engaged violate the Federal Fair Debt Collection Practices Act, 15 U.S.C. Section 1692 et seq.

95.     Defendants are employees and agents of some or all of the named Co-Defendants so that they each are responsible for any acts of that were done in the course and scope of his employment and agency with them, including those acts that were unlawful in connection with the collection activities involving Plaintiff.

96.     The conduct of Defendants, and each of them, in attempting to collect the debt Plaintiff purportedly owed CHASE had the natural consequence of harassing, oppressing, and abusing Plaintiff in an effort to coerce him into paying a debt he did not owe and which he specifically and repeatedly advised Defendants, and each of them, that he did not owe.

97.     At the time defendants, and each of them, made the false, deceptive, and misleading representations set out above they knew, or should have known, that the representations were untrue. The representations of Plaintiff's delinquency or default were made by Defendants nonetheless, and were not withdrawn or retracted even when the falsity of the representations became known. Defendants thereby acted recklessly, willfully, and intentionally

-26-

98.     As a proximate result of Defendants' actions, Plaintiff was caused to suffer economic damages as well as other actual damages for worry, shame, humiliation, loss of sleep, anxiety, nervousness, physical sickness, physical and mental suffering, pain, anguish, and fright.

99.     As a result of Defendants' violations of California Fair Debt Collection Practices Act, Plaintiff is entitled to an award of actual damages, statutory damages up to an amount of $1,000, and reasonable attorney's fees and costs pursuant to 15 U.S.C. Section 1692k.

## CAUSE OF ACTION III

### Defamation/ Credit Slander

### (Defamation Against CHASE, MANN-BRACKEN, and PALISADES, DEBORAH JENSEN, JAMES BRANTON AKA JEFF BRANTON, ERIC WASSERMAN, & other related defendants)

100.     Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates it by reference, as if all were set forth fully herein.

101.     Beginning in or about 2006 Defendants, and each of them, stated to other, including communications among themselves and repeated to others, both verbally and in writing, that Plaintiff owed a debt to CHASE and was delinquent in his repayment obligations. Each communication was done by not only the specific defendants making them, but in the capacity as agent(s) of all remaining defendants. Thus, each repetition of false claims of a debt owing, was a continuation of the original wrongful conduct. Defendants made these statements in the context of negotiating repeated assignments of the purported debt. The assignments generated continuing profit for each of these Defendants who were able to sell and assign the purported debt for a monetary advantage. The statements, made to induce the assignees to purchase the debt, were false because Plaintiff's credit accounts with CHASE, and the credit extended to him as alleged by CHASE, was never owed CHASE on a credit account and Plaintiff never was delinquent in repayment obligations for any account or other obligation with CHASE unless falsely manipulated to appear so by CHASE for its economic benefit.

CHASE attempted to hide its wrongful conduct, including defamatory statements, by

1   transfers of the account to various other parties knowing plaintiff would not find out about these

2   actions until the next time he checked his credit report, which in one instance was on May 22,

3   2008. This check was in response to a letter from PALISADES, for itself and as an agent of

4   CHASE, alleging a debt owed by plaintiff.

5       The incorrect and knowingly improper notations will continue on the credit profile until

6   2013 and thus plaintiff will continue to suffer damages and injuries through that time as the

7   wrong of defendants I continuing. This fact was not found by plaintiff until May 22, 2008.

8       102.   The false statements uttered by Defendants (DEBORAH JENSEN , ERIC

9   WASSERMAN , JAMES BRANTON AKA JEFF BRANTON and others can not be set out

10  verbatim at this point due to the fact that information about their contents, is within the exclusive

11  possession, custody and control of defendants, and can be found only through discovery and the

12  subpoena power of this court.  On information and belief, said statements clearly expose Plaintiff

13  to contempt, ridicule, and obloquy, because they identify Plaintiff to the credit reporting agencies

14  and all other persons who might review plaintiff's credit file, as a person who is dishonest,

15  irresponsible, disorganized, undisciplined, self-indulgent, not creditworthy, and a slacker. The

16  statements were understood by those who heard or read them (other financial institutions as well

17  as other potential credit grantors) in a way that defamed Plaintiff, as the Defendants themselves

18  engaged in the business of buying and assigning the debt in an effort to collect on it for their own

19  economic benefit.  Plaintiff did not know the full extent of the falsity of the statements until after

20  January 2007.

21      103.   As a proximate result of the above-described publication of these false,

22  deceptive, and misleading statements, Plaintiff has suffered the loss of his reputation, shame,

23  mortification, and hurt feelings, all to his general damage. He also has been subjected to

24  unwarranted collection activities and missed important activities to meet with legal researchers

25  and to make Court appearances.

26      104.   The above-described publication of these false, deceptive, and misleading

27  statements (a mere inquiry into an individual's credit by any of the defendant and other related

28  defendants is a negative insofar as other credit grantors are concerned) was made with malice

-28-

and oppression in that Plaintiff advised CHASE and furthermore, advised the other Defendants that he did not owe CHASE or anyone else for the alleged charges, but Defendants continued to publish the statements nonetheless when they knew or should have known the statements were fundamentally untrue. Plaintiff therefore is entitled to an award of punitive damages pursuant to Civil Code Section 3294.

105.   Furthermore, Defendants CHASE, MANN-BRACKEN and PALISADES directed, authorized, and ratified the wrongful acts of their employee and agents and other related defendants who are employees and agents of some or all of the named Co-Defendants so that they each are responsible for any acts of were done in the course and scope of his employment and agency with them, including those acts which were unlawful in connection with the collection activities involving Plaintiff, thereby also justifying an award of punitive damages pursuant to Civil Code Section 3294(b).

## CAUSE OF ACTION IV

### *(Fraudulent Misrepresentation Against CHASE, MANN-BRACKEN AND PALISADES DEBORAH JENSEN, JAMES BRANTON AKA JEFF BRANTON, ERIC WASSERMAN, and other related defendants)*

106.   Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates it by reference, as if all were set forth fully herein.

107.   At various times from 2006 through current date, Defendant CHASE advised Plaintiff that he owed CHAS a sum that had become due and past due but remained unpaid.

108.   On or about January 5, 2007, and many, many times thereafter, Defendant CHASE, MANN-BRACKEN AND PALISADES DEBORAH JENSEN, JAMES BRANTON AKA JEFF BRANTON, ERIC WASSERMAN and agents of said parties advised Plaintiff by letters, including one dated January 5, 2007 and others thereafter that he owed a sum originally to CHASE that was due and past due and that it had a right to collect on this debt when in fact said parties knew or could reasonably ascertain plaintiff did not own the monies claimed.

109.   These representations, and all of them, were in fact false. The true facts

-29-

are that Plaintiff never owed CHASE or any of the other Defendants the sums as alleged, the alleged debt was in fact being disputed and that CHASE, were well aware of the dispute and knew or should have known no amounts were due or past due to CHASE or any of the other Defendants.

110.    Plaintiff is informed and believes, and thereon alleges that when Defendants aforementioned made these representations, they knew them to be false. Nevertheless, they made these representations with the intention to deceive and defraud Plaintiff and to induce Plaintiff to make payments to them in order to make themselves monies from the fraudulent dealings and allegations of the amount of the debt by CHASE and other related defendants, charges, fees, and interest assessed against Plaintiff. In so acting, Defendants contrived to force Plaintiff to pay a sum he did not owe in response to the delinquent notices and aggressive collection activities. Defendants made the representations knowing Plaintiff was unsophisticated and financially unable to obtain counsel to advise him, thereby assuring greater opportunity that their scheme against Plaintiff would succeed to their economic benefit.

111.    Plaintiff, at the time these representations were made by Defendants, and each of them, was ignorant of the details of the falsity of Defendants' representations and until investigation, believed them to be true. Because of the said representations, Plaintiff was induced to and did make investigation in order to resist the collection activity of Defendants, relying on a misplaced belief that said defendants would act in good faith and cease their improper activities, even until the filing of this action. Had Plaintiff known the actual facts that said defendants had no intention of ceasing their improper collection activities, he would not have failed to take immediate action to protect himself from these aggressive collection activities of Defendants. Plaintiff's reliance on the implied representations of Defendants that they would not seek money not due, was justified because he was unsophisticated about credit matters, he was intimidated by correspondence from attorneys for Defendants, he was convinced by the assurances of Defendants they had proof of the debt; these representations came in the form of letters such as the one dated dated January 10, 2007, March 19, 2007, and April 18, 2007 and others indicating a debt was in fact owing; they made false representations about the existence of the obligation

-30-

and his responsibility for the purported debt. The amounts claimed due was plausible considering the incestuous practice of creditors to sell and resell accounts to each other as well as organizations secretly cross-owned and financed by each other.

112.    As a proximate result of Defendant's actions, Plaintiff was caused to suffer economic damages as well as other actual damages for worry, shame, humiliation, loss of sleep, anxiety, nervousness, physical sickness, physical and mental suffering, pain, anguish, and fright.

113.    By engaging in the acts as alleged above, Defendants, and each of them, acted intentionally, maliciously, oppressively, fraudulently, despicably, and in conscious disregard of Plaintiff's rights, thereby justifying an award of punitive damages pursuant to Civil Code Section 3294.

## CAUSE OF ACTION V

### *(Negligent Misrepresentation Against CHASE, MANN-BRACKEN AND PALISADES DEBORAH JENSEN, JAMES BRANTON AKA JEFF BRANTON, ERIC WASSERMAN, And Other Related Defendants)*

114.    Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates it by reference, as if all were set forth fully herein.

115.    As a proximate result of Defendants misrepresentations, Plaintiff has been subjected to costs and fees related to the loss of the value of funds and the time taken to counter the negligent false accusations of defendants, and each of them, in aggressive collection activities and to avert the negative impact on his credit score, which has increased the cost of credit to him, including the cost of a loan to finance his activities, all in an amount according to proof. He also has missed important activities to meet with legal researchers and authorities and to make Court appearances. Many of the communications to plaintiff that support this Cause of Action came, when in writing, unsigned, so as to make it impossible for plaintiff to know the author(s). Only through discovery will plaintiff be able to find the identities and capacities of such persons as well as the specific dates of said communications.

## CAUSE OF ACTION VI

-31-

*(Violations of the Racketeering and Influence Corrupt Organizations Act,*

*18 U.S. C. § 1961 et seq.)*

116.   Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates it by reference, as if all were set forth fully herein.

117.   At all times relevant to this complaint, the "Collection Enterprise" was, and continues to be, an enterprise as defined by 18 U.S.C. § 1961(4), and has engaged in, and continues to engage in, activities that affect interstate and foreign commerce.

118.   Defendants have each knowingly and willfully, agreed, conspired, and associated with the enterprise and conducted and participated in the conduct of the enterprise's affairs, directly and indirectly, by illegally and fraudulently agreeing to add unlawful charges to debts and repeatedly using the threat of civil litigation to extort or attempt to extort payments of the debt, along with the illegal overcharges, all through a pattern of racketeering activity, which injured Plaintiff and, in violation of 18 U.S.C. § 1962(c) and (d).

119.   As described above, the pattern of racketeering involved various, and continuing acts of illegal activity including, but not limited to, acts of:

·   Extortion in violation of the Hobbs Act, 18 U.S.C. § 1951;

·   Wire and mail fraud in violation of 18 U.S.C. §§ 1341, 1343, and 1346;

120.   These acts occurred beginning in at least 1998, continue through the present, and pose a threat of continued criminal activity intended to extort and coerce the payment of excess and illegal charges.

121.   As a result of the pattern of continuing racketeering activity, Plaintiff and have suffered damage, and will likely suffer additional injury if Defendant's conduct continues.

122.   Beginning in or about June 2006, CHASE BANK USA, N.A., MANN-BRACKEN, LLC PALISADES and their individual employees, knowingly and willfully conspired and agreed among themselves to engage in unwarranted collection activities against Plaintiff although Plaintiff disputed the alleged debt, that then because the subject of collection activities. Defendant PALISADES and their related employees joined the conspiracy in or about

1  May 2008

2      123.    To carry out the plan, Defendants communicated with Plaintiff both by

3  means of mail and telephone calls, the he owed the complete debt as alleged by CHASE on his

4  Credit Card Accounts with CHASE Bank, USA, N.A. although vigorously disputed by Plaintiff

5  in many letters.  In particular, Defendants Mann Bracken, LLC, by and through other related

6  Defendants also sent letters in 2007-2008 to Plaintiff seeking payment of the same disputed

7  alleged debt for the CHASE credit card(s).

8      124.    Further, Plaintiff is informed and believes, and thereon alleges that in or

9  about June 2006, CHASE bank, USA, N.A. used the phones and mails to negotiate and

10  assignment of the Credit Card accounts with the Plaintiff's name to other related Defendants.

11      125.    Plaintiff is informed and believes, and thereon alleges that defendants, and

12  each of them, to further ends of the conspiracy, used the mails and telephone lines to effect this

13  series of sales and assignments of the purported debt among themselves to obscure that the debt

14  was a result of fraudulent transactions at CHASE Bank, USA, N.A. to justify the execution of

15  documents to support demands for ever increasing amounts then claimed due and owing on the

16  CHASE Bank, USA, N.A. credit cards of the Plaintiff and to mitigate the necessity for CHASE

17  Bank, USA., N.A. and others to comply with various State and Federal Laws, including the State

18  of California Rosenthal Act as well as the FCRA, FDCPA, inter alia, in furtherance of the

19  conspiracy.

20      126.    Defendants CHASE Bank, USA, N.A., MANN-BRACKEN, PALISADES

21  Collections, LLC, and related defendants invited Plaintiff to use the phone lines and mails to

22  communicate with them about the purported but disputed debt.  He communicated in writing

23  with each several times via the mails since June 2006, including but not limited to July 31, 2006,

24  August 12, 2006, August 23, 2006, January 10, 2007, January 22, 2007, February 12, 20007,

25  February 21, 2007, March 19, 2007, April 18, 2007, April 27, 2007, May 23, 2007 about the

26  disputed debt repeatedly requesting compliance with the FDCPA, inter alia so the fraudulent

27  billings sent to Plaintiff through the mails each and every month could be examined and

28  analyzed, which gives rise to the erroneous fraudulent activities of the defendants, and each of

them. The Defendant's responsive communications were never fully complete or compliant with Plaintiff's requests, and the limited information and documents provided by each were unreadable, unintelligible, and incomprehensible designed to further vex and frustrate Plaintiff for the sole purpose of furthering the conspiracy. All of the Defendant's communications related to acts and objectives in furtherance of the conspiracy.

127. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants at various times from June 2006 to the present have used the mails and telephone lines as well as other forms of electronic communication to notify Credit Reporting Agencies that Plaintiff was delinquent, had defaulted, and the purported debt had been written off as a bad debt by CHASE Bank, USA, N.A. notwithstanding the defendants, and each of them, knew or should have known a legitimate dispute existed with the Plaintiff. The Defendant's inaction and conspiratorial activities forced Plaintiff to bring this action. Defendants, and each of them, furthered the conspiracy by executing documents or causing documents to be executed to conceal the fraudulent acts of one to the other all in a furtherance of the conspiracy to collect additional illegal monies and property from the Plaintiff.

128. Plaintiff is informed and believes, and thereon alleges, that MANN-BRACKEN, PALISADES Collections, LLC, and each of them, with the assistance of others who are presently unknown, guided the operation of the conspiracy. At various times in advance of the litigation and to the effect of various assignments of the purported debt represented themselves as the designated collection agent for CHASE Bank, USA, N.A. but have refused and continued to refuse through the current date to provide any documentation of the assignment of the purported and disputed debt all in furtherance of the conspiracy. Defendants, and each of them, used the mails and telephone wires in their efforts to obtain from the Plaintiff money by false pretenses and representations all in violation of 18 U.S.C. Sections 1341 and 1343.

129. Defendants used the mails and telephone wires in their efforts to obtain from Plaintiff monies and property by false pretenses and representations and in violation of 18 U.S.C. Sections 1341 and 1343.

130. Plaintiff is informed and believes and thereon alleges that the conspiracy

-34-

is ongoing, because the collection action Defendants initiated is still pending.

131.    As a direct and proximate result of the fact that each Defendant aided and abetted the others in violating 18 U.S.C. § 1962(a) and (c), Plaintiff has been injured in his business or property by both the predicate acts which make up the Defendants' pattern of racketeering and their investment and reinvestment of income therefrom to operate, expand, and perpetuate the "Collection Enterprise."

132.    Specifically, Plaintiff has been injured in their business or property by the coerced payment of excess and improper charges, through undisclosed add-ons and threats of civil litigation and additional damages.

133.    CHASE and All Defendants did knowingly conduct and/or participate, either directly or indirectly, in the conduct of the affairs of said RICO *enterprise* through a continuing and established *pattern of racketeering activity*, frequently used by the defendants and each of them, not only against this Plaintiff but other similarly situated users of the Credit Cards issued by CHASE  which included the following:

134.    Did conspire among themselves, directly and indirectly, to disseminate false and misleading information to members of the general public, including Plaintiff, who received such information, respecting credit cards offered to the members of the public by CHASE;

135.    Did charge persons, including Plaintiff, who received and used credit cards issued by CHASE, unreasonable fees, charges and penalties that were not disclosed to the credit card holders or if disclosed, the disclosures were hidden in the massive amount of printed matter given credit card holders in such a manner, that it would be difficult if not impossible for them to find in a type font on a paper with a background to render the material indecipherable, unintelligible and incomprehensible to the most educated as well as this Plaintiff and others similarly situated.  The interest rates and fees charged to Plaintiff and others similarly situated are so onerous and unconscionable, said interest rates and fees exceed those charged by so called PAYDAY LENDERS, many of which are owned directly, indirectly and /or financed, represented by or are the same collectors as here, the defendants and each of them. Consequently, the interest rates are per se unlawful and uncollectible.

136.   Did improperly and without good and legal cause, designed and directed an enterprise to continuously change the interest to be charged on credit card accounts when the cardholders had been current in their payments to CHASE, to Plaintiff and other CHASE credit card holders;

137.   Did conspire among themselves to intimidate, threaten, and otherwise force credit card holders, including Plaintiff, to pay money not lawfully due under threat of reporting negative payment history information about them to credit reporting agencies, filing lawsuits against them and otherwise causing them financial, emotional and permanent psychological harm.

138.   During the past ten (10) or more calendar years preceding the filing of the original complaint in this matter, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(a) and (b), and did so in violation of the RICO law at 18 U.S.C. 1962(c) (Prohibited activities).

139.   Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner that they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of the RICO law at 18 U.S.C. 1962(c) *supra*.

140.   Specific to the foregoing two paragraphs, Plaintiff has personally been injured, as defined in 1962(c) of the RICO act Chapter 96 of Title 18 of the United States Code, 18 U.S.C. § 1961–1968.) Under Section 1962(b), said injuries consist in having been charged and paid improper and unlawful fees and penalties to CHASE; by being reported negatively to credit reporting agencies when he had done nothing wrong or illegal, for the sole purpose of obtaining monies unlawfully from him.

145.   Liability attaches to the individual defendants and corporate defendants other than CHASE under Section 1962(c), in that said defendants did, at all times mentioned herein, conspire among themselves to violate subsections (a), (b) and/or (c) of said section. Such conspiracy took place at times and places known only to defendants but may be found through

-36-

1   discovery.

2        146.    Pursuant to 84 Stat. 947, Sec. 904, Oct. 15, 1970, the RICO laws itemized above

3   are to be *liberally* construed by this honorable Court.  Said construction rule was never codified

4   in Title 18 of the United States Code, however.  *Respondent superior* (as explained above).

5

6   ## CONSPIRACY TO ENGAGE IN A *PATTERN OF RACKETEERING ACTIVITY*:

7

8   ## 18 U.S.C. §§ 1961(5), 1962(d)

9        147.    Plaintiff now re-alleges each and every allegation as set forth above, and hereby

10  incorporates it by reference, as if all were set forth fully herein.  Substance prevails over form.

11  At various times and places, the details of which are known only to defendants at this time,

12  Defendants did conspire to acquire and maintain an interest in a RICO *enterprise* engaged in a

13  *pattern of racketeering activity*, to wit, CHASE, and Defendant MANN-BRACKEN,

14  PALISADES COLLECTIONS, LLC in violation of 18 U.S.C. §§ 1962(b) and (d).

15

16       148.    At various times and places partially known to Plaintiff, Defendants did also

17  conspire to conduct and participate in said RICO *enterprise* through a *pattern of racketeering*

18  *activity*, in violation of 18 U.S.C. §§ 1962(c) and (d).  See also 18 U.S.C. §§ 1961(4), (5), and (9)

19  as more fully alleged hereafter.

20       149.    During the past ten (10) or more calendar years preceding the date of the filing of

21  Plaintiff's complaint all Defendants did cooperate jointly and severally in the commission of two

22  (2) or more of the predicate acts that are itemized at 18 U.S.C. §§ 1961(1)(A) and (B), in

23  violation of 18 U.S.C. 1962(d) as herein detailed.

24       150.    Plaintiff further alleges that all Defendants did commit two (2) or more of the

25  offenses itemized above in a manner, which they calculated and premeditated intentionally to

26  threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in

27  violation of 18 U.S.C. 1962(d) (Prohibited activities *supra*).  Pursuant to 84 Stat. 947, Sec. 904,

28  Oct. 15, 1970, the RICO laws itemized above are to be *liberally* construed by this Court.

1

***The Civil Conspiracy***

2          150.    Defendants willfully, knowingly, and intentionally agreed and conspired

3    with each other for the purpose of engaging in unlawful conduct, for unlawful purposes,

4    including acts of extortion and fraud, the furtherance of their scheme, and for the purpose of

5    engaging in otherwise unlawful conduct by wrongful conduct and means.

6          151.    Defendants committed the acts alleged pursuant to, and in furtherance of

7    that agreement and furthered the conspiracy by cooperating, encouraging, ratifying, or adopting

8    the acts of the others.

9          152.    As a direct and proximate result of the acts in furtherance of the

10   conspiracy, Plaintiff and have suffered injury, damage, loss, and harm. The wrongful conduct

11   committed pursuant to the conspiracy was a substantial factor in causing this harm.

12         153.    Defendants' intentional agreement to commit, and the commission of

13   these wrongful acts was willful, malicious, oppressive, and in wanton and conscious disregard of

14   Plaintiff's rights. Plaintiff is therefore, entitled to an award of punitive damages to punish their

15   wrongful conduct and to deter future wrongful conduct.

16                                  ***The Aiding and Abetting***

17         154.    Defendants had full knowledge of, or should have reasonably known of

18   the true nature of the wrongful conduct of each other Defendant, and aided and abetted such

19   wrongful conduct, including acts of extortion, fraud, and conspiracy, by providing substantial

20   assistance and by encouraging the others to act.

21         155.    As a direct and proximate result of the aiding and abetting of these acts,

22   Plaintiff and have suffered injury, damage, loss, and harm. The wrongful conduct aided and

23   abetted by these Defendants was a substantial factor in causing this harm.

24         156.    Defendants' aiding and abetting of these wrongful acts was willful,

25   malicious, oppressive, and in wanton and conscious disregard of Plaintiff's and ' rights. Plaintiff

26   and are, therefore entitled to an award of punitive damages to punish their wrongful conduct and

27   to deter future wrongful conduct.

28         157.    As a result of Defendants' actions, Plaintiff and have been damaged in an

1    amount to be proven at trial.

2                              **COUNT VII**

3          **Declaratory and Injunctive Relief Under 18 U.S.C. § 1964(a)**

4          158.    Plaintiff now re-alleges each and every allegation as set forth above, and

5    hereby incorporates it by reference, as if all were set forth fully herein.

6          159.    His claim arises under 18 U.S.C. § 1964 (a), which authorizes the District

7    Courts to enjoin violations of 18 U.S.C. § 1962, and under 28 U.S.C. § 2201, which authorizes

8    associated declaratory relief.

9          160.    As set forth in Counts II through IV above, Defendants have violated 18

10   U.S.C. §§ 1962(a), (c), and (d) and will continue to do so in the future.

11         161.    Enjoining the Defendants from committing these RICO violations in the

12   future and/or declaring their invalidity is appropriate as the Plaintiff and have no adequate

13   remedy at law and will, as set forth above, suffer irreparable harm in the absence of the Court's

14   declaratory and injunctive relief.

15         162.    As a result of Defendants' illegal collection practices, Plaintiff and have

16   suffered and will continue to suffer severe and irreparable injury and harm.

17         163.    Accordingly, Plaintiff and seek a permanent injunction, ordering

18   Defendants to cease and desist their practice of adding overcharges to the debt owed and

19   threatening civil litigation in an effort to collect the excess amounts, in violation of RICO, as set

20   forth above. Moreover, Plaintiff and seek a declaration that the Defendants' use of a percentage

21   up-charge with the threat to add even more than that is not reasonable, and bears no relationship

22   to the effort and activity involved in collecting the debt, nor the mount of the debt.

23                             **COUNT VIII**

24                         **UNJUST ENRICHMENT**

25         164.    Plaintiff now re-alleges each and every allegation as set forth above, and

26   hereby incorporates it by reference, as if all were set forth fully herein.

27         165.    The Defendants add unreasonable, unconscionable and illegal charges to

28   the original debt, and then use extortionate practices to collect the over charges.

166.    As a result of these debt collection practices, the Defendants have been unjustly enriched by their collection of falsely misrepresented debt.

167.    Plaintiff and seek disgorgement of the illicit profits, restitution in the amount of the excess charges levied by Defendant, compensatory damages and other relief as set forth in the prayer for relief below.

## CAUSE OF ACTION IX

## FOR FRAUD

168.    Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates it by reference, as if all were set forth fully herein.

169.    On or about January 1, 1994 (before or thereafter) Plaintiff, at the solicitation of CHASE or its predecessor in interest applied for credit cards issued by CHASE or its predecessor in interest. Within 30-days of said application, CHASE or its predecessor in interest issued credit cards to Plaintiff, which cards and the account attached thereto, are the subject of this action.

170.    Plaintiff is informed and believes and thereon alleges, said contract, and the solicitation therefore, contained language that either, directly or by implication, indicated CHASE or its predecessor in interest would follow all applicable laws with respect to Plaintiff's use of the credit card.

171.    CHASE or its predecessor in interest was, as a matter of law, at all times mentioned herein, under a legally imposed duty of honest dealings, good faith and fair-dealings as to Plaintiff with respect to said credit cards and the use and billings relating thereto.

172.    When Plaintiff received the solicitations from CHASE or its predecessor in interest and entered into the contract aforesaid, he reasonably believed that CHASE would comply with the promises and representations, specific and implied, in said contract and would deal with him fairly, honestly and in good-faith and would act in conformity with all applicable laws in dealing with Plaintiff.

173.    Plaintiff is informed and believes and thereon alleges that within 6-months after issuing said cards, CHASE commenced, as relating to Plaintiff, a course of conduct that

-40-

amounted to a breach of the covenant of good-faith and fair-dealing by doing the following:

a.     Charging excessive fees and/or penalties to Plaintiff when     they were not due and/or authorized by law or said contract;

b.     Engaging in "creative bookkeeping" whereby debits and credits were posted in a form, time and manner calculated to increase Plaintiff's bill;

c.     Adding terms to the contract without proper and/or adequate notice to Plaintiff by, in some cases, inserting the changes in other material sent to Plaintiff in such a way that it would easily be overlooked and in language not reasonably understandable. Such additions were in writings that were alleged to have been provided but which plaintiff is unable to find and defendants have refused to provide plaintiff with copies of said alleged documents. Plaintiff will be able to give specific details when he is allowed discovery, as the proof of the allegations is for the most part in the exclusive possession and control of defendants.

d.     The contract provided for universal default (regardless of how defined or implemented) without proper and/or adequate notice to Plaintiff by, inserting the reasons for implementation of extraordinary changes in interest to be charged (AKA penalty) in material sent to Plaintiff in such a way that it would easily be overlooked and in language not reasonably understandable.

e.     CHASE extended lines of credit to be used as needed by Plaintiff without warning Plaintiff that frequent use of the line of credit beyond a certain unilaterally decided percentage would subject Plaintiff to penalty rate of interest and failed to disclose such potential, said potential camouflaged with material sent to Plaintiff in such a way that it would easily be overlooked and in language not reasonably understandable, even unintelligible and incomprehensible.

f.     CHASE used the mails and telephone lines to prepare monthly statements that purportedly displayed accurately, the principal amount of the debt owed, the amount of the interest being charged, the APR of the interest, the combined total for the billing period, the minimum monthly payment required and ostensibly the total dollar amount required to pay the entire balance then due.

g.     Each of the statements mailed by CHASE to the Plaintiff over the past 10 or more years were   knowingly   inaccurate,   not   truthful,   blatantly   false,   wanton,   deliberate,   negligent

misrepresentations of the true amounts involved in each category enumerated above and others from Plaintiff at the specific direction of CHASE to collect funds not legally due; all in furtherance of the continuing goals of the enterprise and the conspiracy.

174.    The above course of conduct as alleged is part of a larger plan, scheme, and design to cheat and defraud Plaintiff and others similarly situated of money, and such plan, scheme, and design was in place with CHASE, Defendants MANN-BRACKEN, and PALISADES, and related named individuals at the time it solicited Plaintiff to apply for a credit card and when it in fact issued one or more to Plaintiff.

175.    Had Plaintiff known the true facts and intent of CHASE, Defendants MANN-BRACKEN and PALISADES, and related named individual et al to act in breach of its duty of good faith and fair dealing, he would not have applied for, received, and used said credit cards.

176.    Plaintiff is informed and believes and thereon alleges that the aforementioned plan, scheme and design to defraud has been used by CHASE and defendants and each of them for several years prior to its dealings with Plaintiff and against thousands if not millions of American credit card holders who use CHASE credit cards.

177.    As a direct result of the conduct of CHASE and defendants as set out above and below, Plaintiff has been monetarily damaged in an amount not yet fully ascertained but which Plaintiff believes to be in excess of TEN Million dollars ($10,000,000.00) or more.

178.    As a proximate result of the wrongful acts as herein alleged, the Plaintiff has suffered economic injury as a result of the negative reports made about him made by defendants, and each of them, to credit reporting agencies.  As a result of a lowered credit score, the cost of credit for the Plaintiff has substantially increased if any can now be found.  Plaintiff has also missed important activities to make court appearances, research legalities, prepare pleadings and pursue his constitutional rights of redress for the wrongs, negligently, deliberately inflicted upon him by the defendants and each of them.  Plaintiff's injuries are subject to proof at trial.

-42-

179.    Further, Plaintiff is entitled to treble damages pursuant to 18 U.S.C. Section 1964(c).

### CAUSE OF ACTION X

*(Unfair Competition Pursuant to Business & Professions Code Section 172 et seq.*

*Against all Defendants)*

180.    Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates it by reference, as if all were set forth fully herein.

181.    Defendants, and each of them, have engaged in conduct, as described above, constituting acts of unfair competition as defined in Business & Professionals Code Section 17200, including collection activities against Plaintiff for a debt he did not owe and which Defendants knew or should have known Plaintiff did not owe. Furthermore, Defendants have abused the process of law by using the judicial process to attempt to collect money from Plaintiff, which was not owed and for which Defendants had no legitimate claim.

182.    Defendants have committed an illegal practice by using collection activities that are prohibited by the Fair Debt Collection Practices Acts at California Civil Code Section 1788 et seq. and 15 U.S.C. Section 1692 et seq. Furthermore, Defendants have committed an illegal practice by engaging in a civil conspiracy in violation of the Racketeer Influenced and Corrupt Organization statute, 18 U.S.C. Section 1961 et seq.

183.    Defendants have committed a fraudulent act by making misrepresentations on which Plaintiff relied to his damage.

184.    In particular, the following acts, among others, constitute unfair competition to Business and Professions Code as well as unfair trade practices:

185.    As a direct, proximate, and foreseeable result of Defendants' wrongful conduct, Plaintiff has suffered economic injury. Plaintiff is entitled to disgorgement of all revenues, earnings, profits, compensation, and benefits obtained by Defendants as a result of their unfair, unlawful, and fraudulent business acts and practices.

### CAUSE OF ACTION X1

*(Intentional Infliction of Emotional Distress Against All defendants)*

-43-

186.    Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates it by reference, as if all were set forth fully herein.

187.    CHASE has a flaw in the way it conducted business so that an account that has been open for a substantial period, and paid in good faith monthly better than agreed by a CHASE cardholder questioning charges incurred on it would be more responsive to a consumer'' concerns and comply with its obligations under the FCRA FDCPA, inter alia.  Unlike legitimate credit card issuers, this complete unwillingness to provide the reasonably requested documentation should have and did raise suspicions about the legitimacy of the purported debt. Nevertheless, CHASE did not investigate the oddities of this account and instead, assigned it out to the "Collection Enterprise" on or about June 2006, or shortly thereafter after, allowing the debt to be declared a "bad debt" internally and after adding unjustified, unlawful, illegal charges, interest, and penalties to the account in Plaintiffs name to MANN-BRACKEN AND PALISADES, DEBORAH JENSEN, JAMES BRANTON AKA JEFF BRANTON, and other related defendants for its own additional economic benefit. CHASE and related other defendants had the ability to investigate and uncover the fraudulent nature of the questions raised by Plaintiff and others similarly situated but chooses and continues to refuse to do so as indicated in the correspondence referenced above.

188.    MANN-BRACKEN AND PALISADES, DEBORAH JENSEN, JAMES BRANTON AKA JEFF BRANTON, became aware of the legitimate dispute that existed not later than January 2007 of the purported debt in the course of trying to collect on it and no later than mid to late January 2007. Instead of ceasing its collection activities when it realized it could not prove the debt, CHASE, MANN-BRACKEN AND PALISADES, DEBORAH JENSEN, JAMES BRANTON AKA JEFF BRANTON, instead caused to be created negative credit payment history with the credit bureaus. It then sold the questionable debt to PALISADES.

189.    Plaintiff communicated with CHASE, MANN-BRACKEN AND PALISADES, DEBORAH JENSEN, JAMES BRANTON AKA JEFF BRANTON IN or about the period of June 2006 that he disputed the entire debt of the accounts. These Defendants had the obligation and ability at that time to investigate and confirm the amount of the debt. Even a

1   cursory examination would have revealed the suspicious lack of documentation in support of the

2   debt; the dates of the alleged default with correspondence and this examination should have been

3   undertaken by December 2006. Nevertheless, these Defendants did not cease the collection

4   efforts of the "Collection Enterprise," and subsequently for their own financial gain sold and the

5   debt to PALISADES, yet another member of the "Collection Enterprise."

6       190.   PALISADES purchased the debt in or about May 2008 with the

7   knowledge of the records on file in the collection activities of the "Collection Enterprise," It was

8   on notice then that the documentation in support of the debt was not valid, and it had an

9   opportunity to investigate the bona fides of the debt at that time. Instead, it undertook aggressive

10  collection activities on a questionable debt. Furthermore, the "Collection Enterprise," intent was

11  to profit greatly from the fraudulent debt by selling it to another collection company within the

12  "Collection Enterprise," PALISADES. PALISADES in turn continued the collection activity

13  and did so in accord with the custom and practice of the "Collection Enterprise," without

14  sufficient due diligence to assure it of the authenticity of the debt.

15      191.   Defendants' ongoing effort to collect from Plaintiff on a debt they knew or

16  should have known was not due resulted in a significant financial and emotional burden on

17  Plaintiff from Defendants' faulty and careless, reckless and unlawful, illegal business practices.

18  Defendants conduct was willfully, wantonly, recklessly, and intentionally undertaken and was

19  designed to coerce, confuse, and create great mental stress on Plaintiff so that he would give

20  them monies and property to which they were not entitled. Defendants, and each of them, knew

21  Plaintiff was unsophisticated, had limited financial resources, and could not afford to retain

22  counsel to advise and represent him.

23      192.   As a proximate consequence of the Defendants' intentional infliction of

24  emotional distress on Plaintiff, Plaintiff has suffered great worry, humiliation, embarrassment,

25  loss of sleep, anxiety, nervousness, physical sickness, physical and mental suffering, pain,

26  anguish, and fright.

27      193.   By reason of the acts alleged above, Plaintiff was required to miss time

28  from important activities to attend to his finances, gain employment to appear in Court, to deal

-45-

1    and to confer with Legal Researchers and authorities.  During those times, Plaintiff was unable to

2    attend to his usual activities when he works at his profession.

3        194.    The acts of Defendants as alleged above were willful, wanton, malicious,

4    and oppressive, and justify an award of punitive damages pursuant to Civil Code Section 3294.

5        While each individual act may seem small, the totality of the continuing

6    harassment, over an extended period of time is clearly something that rises to the level where a

7    person of reasonably sensibilities would say it is outrageous. It is the continuing patters of abuse

8    that is the heart of this cause of action and that caused the emotional distress.

9

10                **CAUSE OF ACTION XI1**

11        **CAUSE OF ACTION FOR BREACH OF CONTRACT**

12            **Against CHASE BANK, USA**

13        195.    Plaintiff now re-alleges each and every allegation as set forth above, and

14    hereby incorporates it by reference, as if all were set forth fully herein.

15        196.    Defendant failed to perform its obligation pursuant to the original credit card

16    agreement materially breaching the agreement. Plaintiff does not have a copy of the original

17    contract/credit card agreement or amendments thereto and seeks leave of this court to amend this

18    cause of action following the obtaining of the documents through discovery.

19

20        197.    Defendant intentionally injured the Plaintiff by committing fraud and

21    misrepresentations to credit bureaus to ruin the personal credit of the Plaintiff to enforce their

22    unlawful breach of the agreement, including but not limited to the imposition, enforcement and

23    collection of illegal penalties and additional fees, most of which was applied retroactively.

24        198.    After entering into said contract, CHASE further breached said contract,

25    including the implied covenant of honest, good-faith and fair-dealing, by falsely reporting

26    Plaintiff to credit and collection agencies alleging he defaulted in payments due, thereafter

27    assigning the account to the "Collection Enterprise," The fact was, Plaintiff refused to pay

28    money that was not due.

-46-

199.    The breaches alleged were a continuing course of conduct on the part of CHASE, and were done with the specific and willful intent to injure him in his finances, even knowing there were disputes by plaintiff of the alleged charged, and, as such, the breaches continue to this date including in part, the improper sending of Plaintiff's account for collection to the "Collection Enterprise," advising the persons that Plaintiff has not paid a legitimate bill, and causing Plaintiff to defend himself from the false charges of non-payment of his bills from CHASE and other related defendants.

200.    Defendant unilaterally changed the terms of the credit card agreement and raised the interest rate from the minimal introductory rate to 29.24% and more.

201.    To the extent that CHASE's contractual provisions purport to authorize retroactive rate increases, they are void and unenforceable since they are penal in nature. As such, they constitute illegal penalty provisions rather than valid liquidated damages provisions. Furthermore, the additional finance charges instantaneously imposed by means of retroactive rate increases unfairly penalize card members in the sense that they are imposed *on top of the other* contractual fees or penalties that CHASE discloses it will charge in the event of a card member's default. As such, these retroactive increases constitute illegal penalties. The increased finance charges arising from a retroactive increase are not intended to be a reasonable estimate of the damages, if any, which would likely be incurred by CHASE as a result of a default, particularly since interest continues to accrue on outstanding balances. In addition, Plaintiff is informed and believes, and thereon alleges that CHASE did not intend its contractual provisions, which purport to authorize retroactive rate increases, to serve as valid liquidated damages provisions.

202.    In the case Plaintiff and others similarly situated whose interest rates were increased as a result of a default or reasons other than default, CHASE improperly imposed illegal penalty rate and finance charge increases in addition to the agreed upon Fees, causing damages to Plaintiff having no relationship to the actual damages which could arguably be incurred by CHASE as a result of such defaults.

-47-

203.    The imposition by CHASE of retroactive rate and finance charge increases is unlawful, void, against public policy, and unenforceable.

204.    CHASE sends this Plaintiff and others similarly situated monthly billing statements, which purport to represent the current interest rates as of the statement date. However, for those customers such as this Plaintiff who subsequently receive a backdated rate increase, this representation is false. CHASE thus falsely represents the characteristics, benefits, and quantities of its services, in violation of California Civil Code Section 1788 et seq. and 15 U.S.C. Section 1692 et seq.

205.    CHASE's business practice of not notifying the Plaintiff and others similarly situated of an interest rate increase, until a whole month after its effective date, is fraudulent and deceptive conduct which creates a likelihood of confusion and misunderstanding as to what rate the Plaintiff is being charged at what time for what credit card activities during any given time, in violation of 15 U.S.C. Section 1692 et seq.

206.    CHASE represents that it calculates its finance charges throughout the month by compounding interest on a daily basis. These representations are false for the Plaintiff. In the event of an end-of-billing-cycle rate increase, CHASE backdates the rate increase and re-computes these finance charges using the higher rates. CHASE thus falsely represents the characteristics of its services

207.    Plaintiffs and others similarly situated are consumers who have lost money as a result of CHASE's unfair trade practices described above and are thus entitled to damages.

208.    Plaintiff is informed and believes and thereon allege that the above described unfair and unlawful practices were willfully and intentionally adopted by CHASE in order to mislead its, this Plaintiff and others as to the interest rates and finance charges they were being charged; to effectively deny card members the ability to mitigate the impact of CHASE's backdated rate increases resulting from its end-of-billing-cycle account reviews; to permit the imposition of

-48-

1    illegal penalties; and to enhance defendant's income, thus making an award of treble damages

2    proper.

3

4       209.    As a further result of the foregoing wrongful acts, and because Plaintiff are

5    informed and believe and based thereon allege that Defendant has acted maliciously,

6    oppressively and/or fraudulently, Plaintiffs is not only entitled to the damages as set forth below,

7    but also to exemplary and punitive damages in a sum not presently known, but sufficient for the

8    sake of example and by way of deterring Defendant and others from further such actions.

9

10

11                              **CAUSE OF ACTION XI11**

12               ***Truth in Lending Act Violations (TILA) 15 U.S.C.§ 1601 et seq.***

13       210.    Plaintiff now re-alleges each and every allegation as set forth above, and

14   hereby incorporates it by reference, as if all were set forth fully herein.

15       211.    The Truth in Lending Act Violations (TILA) 15 U.S.C.§ 1601 et seq. was

16   enacted to ensure that creditors provide meaningful disclosures of credit terms so that consumers

17   will be able to compare more readily the various credit terms available to them, avoid

18   uninformed use of credit, and protect consumers against inaccurate and unfair billing and credit

19   card practices.

20       To this end, the credit transaction provisions of the TILA require creditors to clearly and

21   conspicuously disclose certain key terms and cost before consummating a credit transaction.

22       212.    The Plaintiff provided written to CHASE on June 6, 2007 that he believed

23   a billing error had occurred with the current billing statement received via the postal service but

24   previous errors as well.  Under 15 U.S.C.§ 1666 if an obligor responds, within sixty days, to the

25   creditor that he or she believes there is a billing error(s) the Creditor must comply with

26   provisions of the Act 15 U.S.C.§ 1666(a) (5)(7).

27       213.    CHASE'S periodic statement sent to users of the CHASE Credit Cards

28   contains an explanation as to how CHASE calculates the resulting balance in font so small with

ink bended into the paper as to render it indistinguishable, indecipherable and unintelligible even to the most sophisticated among us unless a calculus graduate holding the 18th year of a mathematical education.  Plaintiff does not currently have a copy of the document but will seek leave of the court to Amend to be more specific following the obtaining of the document in discovery, which is in process.

214.    CHASES periodic statement sent to users of CHASES Credit cards contains information ostensibly that shows information relating to charges and credits to the Plaintiffs account and others similarly situated.

215.    Plaintiff contends that taking into consideration the information provided by Chase it is impossible to ascertain how CHASE arrived at the resulting balance.

## CAUSE OF ACTION X1V

## FOR BREACH OF THE IMPLIED COVENANT OF

## GOOD FAITH AND FAIR DEALING

216.    Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates it by reference, as if all were set forth fully herein.

217.    The Implied Covenant of Good Faith and Fair Dealing applies to CHASE's contracts with Plaintiff.

218.    It is a breach of good faith and fair dealing to backdate a rate increase prior to the event, which triggered it.

219.    CHASE's actions violate the Implied Covenant of Good Faith and Fair Dealing by:

a)        Imposing penalties in addition to a late charge for late payments;

-50-

b)        Retroactively increasing interest rates on the customer without any advanced notice whatsoever.

WHEREFORE, Plaintiff demands judgment as follows:

An award of damages in an amount to be determined at trial, and an award of prejudgment interest at the maximum rate allowable by law;

1.  An award of statutory and treble damages;
2.  Punitive damages;
3.  Injunctive relief;
4.  The costs of suit, including, but not limited to, money and time cost and
5.  Such other and further relief as may be just and proper.

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

As to the First Cause of Action

1.      For general damages according to proof;
2.      For statutory damages;
3.      For punitive damages; and
4.      Monetary cost of legal research.

As to the Second Cause of Action

1.      For general damages according to proof;
2.      For Statutory damages; and
3.      Monetary cost of legal research.

As to the Third Cause of Action

1.      For general damages according to proof; and
2.      For punitive damages.

-51-

As to the Fourth Cause of Action

    1.     For general damages according to proof; and

    2.     For punitive damages.

As to the Fifth Cause of Action

    1.     For general damages according to proof

As to the Sixth Cause of Action

    1.     For general damages according to proof;

    2.     For treble damages; and

    3.     Monetary cost of legal research.

As to the Seventh Cause of Action

    1.     For disgorgement of all revenues, earnings, profits, compensation, and benefits obtained by Defendants as a result of their unfair, unlawful, and fraudulent business acts and practices.

As to the Eighth Cause of Action

    1.     For Economic damages according to proof;

    2.     For mental suffering according to proof;

    3.     For punitive damages; and

    4.     Monetary cost of legal research.

As to the Ninth Cause of Action

    1.     For Economic damages according to proof;

    2.     For mental suffering according to proof;

    3.     For punitive damages; and

    4.     Monetary cost of legal research.

As to the Tenth Cause of Action

    1.     For Economic damages according to proof;

    2.     For mental suffering according to proof;

    3.     For punitive damages; and

    4.     Monetary cost of legal research.

As to the Eleventh Cause of Action

    1.    For Economic damages according to proof;

    2.    For mental suffering according to proof;

    3.    For punitive damages; and

    4.    Monetary cost of legal research.

As to the Twelfth Cause of Action

    1.    For Economic damages according to proof;

    2.    For mental suffering according to proof;

    3.    For punitive damages; and

    4.    Monetary cost of legal research.

As to the Thirteenth Cause of Action

    1.    For Economic damages according to proof;

    2.    For mental suffering according to proof;

    3.    For punitive damages; and

    4.    Monetary cost of legal research.

As to the All Causes of Action

    1.    For costs of suit incurred herein; and

    2.    For such other and further relief as the Court deems just and proper.

//

//

DATED:  October 20, 2008.

By: _____

ROBERT  TOWNSEND, Pro

Per